Case number 22-7058, Eli Borchov et al. Sherry Mayer Borchov et al. Appellants, Islamic Republic of Iran and Syrian Arab Republic. Mr. Radin, arguing for appellants. Mr. Buell, arguing for court-appointed amicus. And Mr. Hinchelwood, arguing for amicus United States. Good afternoon. May it please the court, I'm Michael Radin and I will be speaking on behalf of the appellants today. The district court has jurisdiction over a claim brought by a victim injured in a terrorist attack committed by or supported by a state-sponsored terrorism, even where none of the victims happened to die in that attack. I'd like to begin with material support because that is all that's necessary for this court to determine jurisdiction. The terrorism exception strips a state-sponsored terrorism of immunity or provides material support for, that is the object or purpose of, such an attack, such an act of extrajudicial killing, not the act of extrajudicial killing, but such an act. Regardless of whether a death happens to occur somewhere in the attack and where a personal injury is approximately caused by that support. The United States makes a few arguments in opposition. First, it urges a narrow reading of the exception that this court has already held in Van Beneden, that we interpret 1605A's ambiguities flexibly and capaciously in the extent that this is ambiguous, and in Hamkin, that the purpose of the statute is to prevent state-sponsored terrorism for escaping liability for their sin. The United States argues that there is some sort of inconsistency in a rule in which a state-sponsored terrorism would not be liable for directly committing an attempted killing, but would be for the material support of that. Now, we don't concede that a state-sponsored terrorism wouldn't be liable for the direct route, if you will, but again, the court doesn't have to would not be stripped of immunity where it directly commits an act of extrajudicial killing that doesn't result in a death. But if this purported inconsistency, to the extent that it exists... Are you disputing, in addition to this question about the material support, are you also disputing whether extrajudicial killing includes attempts? Is that what you mean by what you're saying? I think the statute's the least ambiguous to that. Well, the statute... The definition that doesn't include attempts, whereas I gather the definitions, if I'm recalling correctly, of hijacking and kidnapping do include attempts? The reference... Yeah. Yeah. We think the purpose of the statute is to hold state-sponsored terrorism responsible for acts of terrorism. The fact that it incorporates the definition of extrajudicial killing from the TVPA, Torture Victim Protection Act, we think was meant to capture the extrajudicial element of it. Given that this rips the statute, strips sovereign immunity, it is not meant to interfere with a sovereign state's judicial decisions. There's the problem that there is no judicial attempted. There is no generally judicial battery. It's an imperfect fit for the statute. Perhaps it could have been written differently, but if anything, that's an ambiguity. But less ambiguous, I think, is the material support angle of it. And if there is an inconsistency, if we are incorrect about the direct route, if you will, then it's not clear why that inconsistency would be to the detriment of victims of terrorism versus the state sponsor of terrorism. Again, if it produces an ambiguity, Van Beneden would counsel reading it more broadly. Well, Van Beneden did not involve a jurisdictional provision of the FSIA. It was a statute of limitations, which is not jurisdictional. What is your best authority that we liberally construe waivers of sovereign immunity in the jurisdictional context? Well, Han Kim, this court, said that Congress enacted the terrorism exception expressly to bring state sponsors of terrorism to account for their oppressive practices, as opposed to specifically ending lives. And this court in Schaefer v. Singh held that it was not going to read a statute to come to absurd or even unreasonable results. It's different than what I was asking, though. I'm asking about whether you have any authority, because we have held, and the Supreme Court has held, that jurisdictional provisions of the FSIA and waivers of sovereign immunity generally are narrowly construed. And Van Beneden just didn't implicate that question. I think it's implicit in the purpose, as this court stated in Han Kim, to read the statute to prevent state sponsors of terrorism from escaping liability for their sins. So you had said that the purpose of this provision is to hold state sponsors of terrorism liable for acts of terrorism. But if providing someone material support for the purpose of an extrajudicial killing completes the substantive conduct that supports liability, which I take to be your position, and then the only remaining thing would be harm, then wouldn't any personal injury or death that was proximately caused by the giving of material support to someone's purpose that they use it for an extrajudicial killing be enough for a claim? So let's say I give material support to someone with the object that they use it for an extrajudicial killing, but they don't, and instead, on the way to the grocery store, they have a collision with someone, and that person is harmed. And they bought the car with the money because they're going to, you know, whatever reason, but the only reason they could buy the car was because of material support. I'm just not sure how your reading even limits the law to harms caused by acts of terrorism. It's harms caused by materially supporting people for the putrid purpose of committing one of the specified acts, but the actual claim is no longer limited, under your reading, to an act of terrorism, let alone the four specified acts. Right. Certainly, the act of extrajudicial killing is a limiting principle. It's the purpose of the provision of support. I think it would be a narrow case, such as your Honor suggested, where it would be essentially a negligence claim of traffic accidents, not the purpose of the statute. There is other exceptions that may relate to that. But it would apply on your reading, or tell me what about your reading would prevent it from allowing a victim of a traffic scrape from suing if they could show, A, that the purpose of the state in giving the money to the driver, the objective was to commit an act of extrajudicial killing, and second, that the victim suffered personal injury or death that was approximately caused by that. So it would have to be foreseeable that the recipient of the funds would do that. Yeah, I think it's generally the terrorist attack that serves as the indicator that the material support had that purpose. It seems like it'd be a narrow situation in which Iran won't have evidence that a state sponsor of terrorism provided a bomb to terrorists who then dropped it on the way to an attack and hurt someone's foot. But I'll give another example that would fail to meet the requirement. For example, let's say Hamas had a factory that produced products, and Iran provides training on running that factory that cut corners, I think, and then Hamas produces a product that injures someone. In that case, neither element would be in the sense that there would be no support that was intended, it appears, to cause an act of extrajudicial killing, and there'd be no such act. On your reading, the act of extrajudicial killing is sort of shelved and side-railed once the money is given for that purpose. There's no further nexus between the harm suffered, other than that the giver has to be reasonably foreseeable, I guess, that the money would lead to. Let's say you're talking about money that is given to a terrorist organization, a designated foreign terrorist organization. It's foreseeable that the organization would commit an act of extrajudicial killing, but it's also foreseeable that they would do a lot of other harm. The point of terrorism is with the minimum amount of personnel and material you strike fear into lots and lots of people's hearts, and or you subordinate some of your followers with threats to keep them in line. Somebody who's thinking about joining the terrorist organization and who's beaten up in the back alley, it's foreseeable that that would happen, and the more money that's given, the more those harms are going to happen, and then in Kilburn we said you don't have to show the exact harm, you know, enough that you have an idea of that type of harm. So I'm just wondering whether all of those, under your reading, all of those harms give rise to claims under this provision, and do you think that's what Congress intended? No, I think Congress intended the statute to hold state sponsors of terrorism responsible for terrorist attacks. I think that is... Terrorist attacks, and how do you limit it to terrorist attacks? I think that the purpose of the assistance, I do think, is also limits the type of incident in which someone would have to be hurt is for such an attack, and I think that such an attack occurring is important. I think that once the support is given, I don't think it changes the status depending on, in that terrorist attack, whether someone then incidentally dies. How do you parse it that finely? Where do we find... It seems like either the for such act is satisfied by the purpose of the gift, in which case it's very wide open, or it has to be that somebody has helped such act occur, in which case the or it did, but that requires death. Right. I do think that it is limiting in the sense that the injury is caused by the provision of material support, but Congress intended, to the extent that this is ambiguous, I think it's clear enough that Congress intended it to be in the framework of terrorist attacks occurring, as opposed to, I think, a less likely scenario of the material support approximately causing someone's injury outside of a terrorist attack. William explained that a donor who knows a terrorist group's aims and activities knows the purpose of the donation is to kill, largely what terrorist groups have done. But I will say that to the extent that Congress did not think through all the permutations, that ambiguity should cancel a broader reading. I see my time is up here. Can I have one more question? And my colleagues may also have questions, but in Owens versus Republic of Sudan, we read for not to require purpose, but just to require approximate cause. And so your proposal that the purpose or objective of the material support is what satisfies the four in the four such acts, and therefore you don't have to have such acts ever actually having been facilitated by the material support seems to me in tension with Owens. We read Owens to mean there's no necessity to prove specific intent for a given attack or traceability. I think the objective or purpose of the support is something that is objective and easily shown. I think the alternative reason of four, which the United States supports, that is that it is the, they use a dictionary definition that is the beneficiary recipient is the act. Setting aside whether an act can be a beneficiary recipient versus a person, that's the reading that would, I think, violate the anti-tracing requirement in Owens. If you want us to show that the recipient of a given attack, that you can trace the state sponsors, you know, support, let's say money to a specific attack to show that it's the recipient of that support. We think our reading is more in line with Owens in saying that you can objectively determine the purpose of material support for a terrorist group without further tracing. Indeed, it's the position that states in Holder v. Humanitarian Law Project, which the So what is the reading you give to for such act? The act doesn't have to actually occur because the money is being given for it in the first place. The support is given for such an act as not necessarily the act, but it's given with the intent or the purpose or object of having that attack or act of judicial killing occur. In Concession H-2, it requires that a foreign state be a sponsor of terrorism at the time of the act described in paragraph one. And victim has to have certain listed identities at the time of the act. So for material support that doesn't result in one of the enumerated acts, when do we test that time frame for? They were designated. Do you look at the time they provided the material support? Do we look at the time that the recipients of the material support did something with the money? What's the relevant time under your reading? I don't have the language in front of me. I believe it's at the time of the act enumerated in 28 U.S.C. 1605a. So the question is, does it have to be a completed killing in as much as it then supports the timing question? In this very case, what time would we test when, and I know maybe it didn't matter, but assuming it did matter, somebody hopped onto the, got thrown onto the list. Do we ask whether they were listed as a sponsor of terrorism at the time the attack was undertaken, a physical attack was undertaken in this case, or a different time? I believe so, but I'm not sure. I don't have that language in front of me. I believe so. In fact, I think a later question, I think. Oh, for the act, I believe. I mean, if it's the... Does act refer to exegetical killing, aircraft sabotage, hostage taking, or does it refer to the provision of material support? It may be the provision of material support, but I don't know that that was... Did your clients prove in this case what time, what date the material support was provided? I believe it's a continuous. I mean, Iran and Syria's relationship with Hamas is ending. Was that proven and found in this case? You don't get to say continuous. The court would have to find at the time. Yeah. I mean, they've both been state sponsors of terrorism for longer than Hamas existed, so I don't think it would produce a factual problem here. And what about the, whether someone was, say, an employee of the government or in the armed forces? I know this, but I'm just trying to understand how you read the statute together. I believe it's at the time of the attack, the terrorist attack. The time the material support is provided or the time the attack occurs? I believe it's the time of the terrorist attack in which they're injured. So acts in these provisions, in the rest of 1065A, at least 1065A2, refers to the substantive acts and not material provision of material support is not a relevant act for these purposes. I do think the idea is that it's timed off attack in which they're injured. I think the statute was written with the understanding that these are victims, American claimants, bringing claims based off of terrorist attacks. I don't think that that timing situation was meant to change the definition or the operation of the statute, such as to, for example, here, let a state sponsor of terrorism off the hook because of the incredible good luck that in a given attack, nobody died. So I'm a little bit confused by your confidence that your reading of the statute is limited to an act of torture, extrajudicial killing, aircraft sabotage, or hostage taking, or material support for such act. And if you read the material support not to require that such act actually be completed, then the hook that makes it terrorist, those are for terrorist acts, the hook that makes it terrorist other than the purpose of the giving is gone. And so you could be giving to someone who's not a terrorist to engage in extrajudicial killing, right? Or a hostage taking. And if they do that, then that is an act of terrorism. But if they don't do it and cause some harm, then it's not a terrorist necessarily, but it's still a physical injury or death resulting from the material support in the way you read the statute. So I'm puzzled by, and there may well be some other prerequisite that I'm missing. I think the intent of it is that the injury is a result of the provision of material support or resources for such an act. And that that act is resulting, or the injury is resulting after a terrorist attack as defined there. Wait, where is a terrorist attack defined? That's what I'm having trouble... Well, it's actually defined again in 1605 AC claim, but for the jurisdictional section, I do think that it is taken as a limiting principle, the various acts or the purposes of the provision of terrorist or material support and the assumption that those occur in some way that is causing a personal injury or death too. But a lot of personal injuries and deaths in the world, including those caused by people who may be planning terrorism are not themselves terrorist attacks or terrorist acts. I mean, it's already the case within this that the personal injury doesn't have to be caused by the killing, for example, right? So it's already the case that in a terrorist attack, we gave an example in our briefs, but there are many cases where a death occurs in a fashion that's effectively in the same attack broadly written. In fact, in Van Bennett-Benedict, two attacks, part of one actor incident that happened 500 miles apart, but the death of a particular person, which may come later as a result of the attack and so on, does not itself have to be in the causal flow for the personal injury. A personal injury is coming from the material support. I think that the act is generally what's causing the injury, even if there's a slight ambiguity as to, could one imagine a scenario in which there wasn't a terrorist attack at all? As in, it's already the case that the personal injury is not caused by the killing. The killing is, the actual death is incidental, if anything. It is meant at best to, again, I think define one of the types of attacks. I think the focus there was an extrajudicial in the sense that it is meant to distinguish judicial decisions taken by foreign states and not intruding. But otherwise, it leads to the strange irreconcilable view that it is sufficient to provide material support resulting in even an attempted aircraft sabotage in which maybe someone's personal injuries, they were upset because the flight was bumped together as a result. But one could, you know, take the 1983, the repair response, hundreds of people were injured gruesomely. And for that, Iran would face no responsibility whatsoever, so long as those people managed to all pull through. That's a result, I mean, it feels as a policy matter, it surely feels like there are cases where people who have suffered worse harms don't get compensated and people who have suffered less horrible harms do. But that is a result of the definitions of aircraft sabotage and extrajudicial killing in the statute. So we have an explanation for that line. What I don't understand is why you're confident that there's a limitation to terrorist acts or terrorist harms in the way you read the material support provision. But I think I've already beaten that dead horse enough, so I don't want to... Fair enough. Well, thank you. I'm long over my time, so I'll... Well, it's okay. Oh, sure. Yeah. Do you consider the material support provision to be an aiding and abetting provision? I mean, I think it effectively plays that role. If there's an aiding and abetting provision, I mean, it's... Right. ...references to another statute that is definitely an aiding and abetting provision. Are you aware of any in federal law that applies without the substance of the underlying crime having been completed? No. And I do think that this statute suggests that the terrorist attack is committed. I think, again, I think the focus is on the extrajudicial rather than suggesting that there's some distinction by which a bombing that gratuitously doesn't result in a death is... Are you aware of an aiding and abetting statute? When they're written, they'll specify the principal crime, and then there'll be an aiding and abetting provision, or it'll say it applies to someone who aids or abets that crime. Are you aware of any time an aiding and abetting provision has been interpreted to include something that is not the crime listed in the statute, the principal crime? No, although I don't think that's the case here. Yes. Well, it is if there was no extrajudicial killing, paragraphs, sabotage, hostage taking, or torture. But I don't think that the killing, extrajudicial killing suggests or necessitates that it result in a death for everyone else to have claims. I think it is describing those set of words together, terrorist attack. So you think 1605A covers more than extrajudicial killings, hostage taking, aircraft sabotage, and acts of torture? Anything that could be described as a terrorist attack? I think it has to fall within those categories. I don't think that the... You just said it didn't have to be. It doesn't... Well, I don't think it... If there's no killing, then there has been... If there's been no extrajudicial killing, then there's not a killing. I think it's an attempt to describe a terrorist attack as intent, purpose is to kill, rather than the specific result of it necessarily. So if the actor's purpose is to commit... The provider of money's purpose is that an extrajudicial killing occur, and the terrorist shows up with the purpose of executing an extrajudicial killing, and then freezes, turns around and goes back before doing a thing. Right. Gets out of the car, panics, and gets back in and drives away. That's sufficient under your view, because the provider of support had purpose, and the actor had purpose. Well, then... The purpose need not be completed. Then there'd be no cause, that's part of it. There'd be no what? There'd be no cause. Cause, there's no personal... Oh, so what happens is, I'm there, I see the terrorist, someone get out with a gun or a great big explosive pack on, and then turn around and go... And I'm on the bus, this person's about to board, they get on, and then turn around and go off. And I am emotionally traumatized when I realize I came this close to death. Oh, maybe. I mean... No, I'm not saying that, not maybe, it's your interpretation of the statute, yes or no. Possibly. It seems like... It's your interpretation of the statute. You have a conception of what the statute covers, so if it is, that's fine, as you've described... I'm hearing you describing a way that would cover that. If it doesn't, please tell me, or why you think it might not, tell me. I don't know that the statute contemplates personal injuries caused by aborted terrorist attacks. I think that the... They don't have to be completed. Well, I think the understanding... Okay, so now we'll take it one step further. They get on the bus, and steps on the toe of another passenger, and breaks the toe, panics and gets off. And a personal injury. I don't know if that's caused by the provision of material support. The person would be there, would be getting on the bus and stepping on his toe without provisional material support. I'm not sure if that's the part of the... I'm not asking for the heart, I'm asking whether it's covered by the statute. I don't think it does, but under the approximate cause of material support. I don't think that's foreseeable. Push them out of the way, and then panic and get off. Well, I... Okay, so I think that... Fatal, physical violence. Yeah. They have to be able to qualify on the bus. I think fatal violence, yes, but I do think the terrorist attacks... There are terrorist attacks in which, for example, the people are injured because there's a... Yes. I don't think it's approximate. I think there's foreseeable panic from what appears to be a terrorist attack. Personally, buddy, I get on, I see I've got explosive vest. Yeah. That was my first hypothetic, was... Yeah. So I stop, turns around and gets off. I think that could... Yeah, I think that's a type of terrorist attack. What's that? Yeah, I think that's similar to if someone had a fake bomb as an attempt to sow terror, and then that causes a stampede. I think that was the purpose of the terrorist attack, to harm people. But outside of that narrow situation, I'm not sure it's approximate cause. I think it's foreseeable. It's one for the top, yeah. I am giving money to someone who is an individual hit man, giving him money to assassinate my enemy from the state. And giving him money to assassinate my enemy, I also know that he's a drug addict and that he carries a gun. And it's foreseeable that my giving him a chunk of money is gonna cause him to go out into the drug market on the street and possibly injure himself with adulterated drugs, that's personal injury, or get in a fight with someone else in a transaction with his gun. That's foreseeable. I've given this person, very dangerous person, a lot of money. Why wouldn't there be approximate cause in that case? And my purpose to give it to him to assassinate my enemy is what you think the material support for such act describes. I don't see where in the statute or any applicable legal principle you find limitation. Once you've taken that route of seeing for as a purpose of rather than for such act, the act has to occur and be completed before the material support aided it. I do think the statute was intended, perhaps poorly written, to capture that an injury from one of these attacks, but approximately linking back to the provision of material support  Well, that's a very different position. You said an injury from one of these acts, but we have no extrajudicial killing in the situation of the clients you're representing today. Nobody died except the perpetrator. Right. I understand. I do think the statute, no one would argue it's perfectly written. But I think the idea is that you pay money to have someone go to a shooting, they do the shooting, people are horrifically injured, they pull through or even more so other unrelated people pull through. I don't think the intent of the statute was then to immunize the state sponsor of terrorism from that incident. Got it. Thanks. Thank you very much for your time, your extra time. Good afternoon, Your Honor. My name is Scott Ballinger. I'm the Director of the Appellate Litigation Clinic at the University of Virginia. It's my pleasure to introduce Mr. Ben Buell, who will be arguing for the Court of Anticannacus. Thank you very much, Mr. Buell. Welcome. Good afternoon, Your Honors. May I please the Court? Ben Buell from the Court of Anticannacus. I want to offer, perhaps, a limiting principle. I'm going to use an example that Judge Bates gave in his opinion in Cabrera, the idea of a slip and fall in the terrorist training camp steps. The proximate causation inquiry is the limiting factor here. It has two prongs, substantial factor and reasonable foreseeability. In some of the hypotheticals that Your Honor gave, it is not reasonably foreseeable that provision of material support for the object or purpose of extrajudicial killing would cause, say, a stubbed toe coming off the bus. There's not a substantial factor in the stubbed toe coming off the bus. In other words, it's a fear that's stricken into the hearts of people, fear and emotional trauma, that's stricken into the hearts of the people who see this person get on with explosive vest, gun, whatever you want it to be, that's intended to inflict the harm. And the person turns around and gets off without doing anything. How is that really foreseeable? I agree, Your Honor. I think it's far from clear, though, that this... It's approximately caused by the provision of material support for that very activity. I agree that it's foreseeable, but I think it's far from clear that this statute... Does it violate either your proximate... It doesn't violate your... You said it's reasonably foreseeable. It doesn't violate your approximate causes? It doesn't, but I think it's far from clear that this statute strips immunity from purely emotional injury. It's not tied to some sort of physical injury. As I understand, kind of baseline background, common law principles of court law, especially when it comes to... I'm the wife of the person whose toe got stepped on. Again, I don't think... We have in this very case individuals who suffered really emotional injuries, and then, obviously, given the stage we're at, we think is as true and understandable, the terrible trauma they suffered. But they didn't themselves suffer physical injuries. It was that their relatives did. And so I'm the spouse of the person. I sniff in the statute that says it has to be a certain level, or nothing, level of physical injury before you can have an emotional injury. So there's nothing textual to hang that on. I think the more precise question, Your Honour, is whether the injuries that resulted are the sort of perceivable consequence of providing material support for killing that makes it wrongful to provide material support for killing. What's wrong with my first hypothetical? We agreed, I thought, that people getting terrified is covered. Emotional... It's reasonably foreseeable. That's why it's called terrorism, is that people are going to be terrified, scared, and emotionally traumatized. That's why it's so effective for whom it kills, but it's much more effective for everyone in whom it instills fear. So that's really foreseeable. So that's not going to fall out of your chest, I don't think, is it? I think you and I agree on foreseeability, but it's that personal injury phrase in the statute that I don't think it's far from clear. It covers purely emotional injuries, not tied to some sort of physical injury. So how does this relate to our jurisdictional question here? At the jurisdictional stage, the district court is going to have to make some judgment about how badly the toe was broken, and the legitimacy of the trauma of seeing someone get on with an explosive vest? Your Honor, it brings up an important... Oh, yes, I know. It's an important point that it's going to come down to hard line-drawing questions at the evidentiary stage. Plaintiffs are going to have to prove enough evidence that shows not only the object... I'm not talking about proving the merits. I'm talking about establishing jurisdiction, that you fall within the material court language here. And so we're way before discovery and evidentiary demonstrations here. In my case, where there's a broken toe and terror ensues, but in fact, the person then gets off and doesn't actually take any affirmative steps beyond the broken toe and the terror. What would the district court do? Would there be jurisdiction in that case under your reading of the statute or not? I don't think it would depend on the facts of the material support. What more facts do you need? Well, we need to know the type of material support that was provided. Maybe the type of... All the money and the gun or explosive vest, whatever you might have the person wearing, gun and explosive vest, money, taxicab fare, where they're going to get on this bus, all there, all provided by foreign government. Well, I still think that the district court in that situation, pursuant to 28 U.S.C. section 1608, you'd have to provide evidence as satisfactory to the court. If I was a district judge, I don't think that all that support that you just articulated would have been a substantial factor in the injuries, sub toe. Substantial, it's a but for cause. It would not have happened without the substantial support. This person would not have driven to the bus. This person would not have an explosive jacket to put on, this explosive pack to put on. This person would not have a gun. It wouldn't have boarded the bus at all. But it's approximate causation standard. Right. So is it foreseeable that somebody by... That the state, by providing all that material support, somebody would then run off the bus and stub their toe? It's going to cause a physical injury and emotional harm. Do you think the statute requires more probing than that? Was there a physical injury? Was there emotional harm? Well, it has to be the type of injury that makes providing material support for the purpose of extrajudicial killing wrong. So, if the provision... So when the government said, here's the money, here's the bomb pack, here's the rifle, here's the time and date of the bus location, here's your cab fare, on this date, go and kill all those people I don't like on the bus. That's not enough? I don't think it's enough for the toe, the broken toe. I don't. But it is enough for the emotional harm, the terror that people are actually experiencing after the person got back off the would-be bomber backed out. Not purely emotional injury. And that's just from a background tort principle? Yes, sir. Now, I want to address, if I can let your point about... The person who's terrorized also has a broken toe? The person who's terrorized and also has a broken toe. Same person now, instead of husband and wife. If the physical injury gives rise to a claim, then you can also... You can sue over a broken toe for a tort? Then you would also be able to sue for emotional damages. That would satisfy the statute. Yes, sir. Now, I also want to address the point about the distinction between statute of limitations and the jurisdictional inquiry. I don't think the distinction matters. There's a footnote that follows that sentence of Van Beneden, and the ambiguity should be interpreted flexibly and compassionately. You're speaking a little too quietly. The amplification system is a little finicky. Yes, your honor. The footnote merely following that sentence explains that... You interpret the statute broadly so as to provide a means of redress for individuals who've been victimized by state sponsors of terrorism. So, that reasoning applies equally in this jurisdictional context as it does in the statute of limitations context. Now, I do want to address... Well, just to get back to that, a pretty settled law that waivers of sovereign immunity, statutory or per actions, but we'll say statutory here, are construed narrowly. And we've said that includes under the FSIA, because that's what creates jurisdiction. Now, once jurisdiction is established, this has been happening under other statutes, discrimination statutes, where Supreme Court has said, well, once we have jurisdiction, once the government has given up its special immunity protection, well, then it's going to get treated like everyone else. And you could have a generous interpretation of the substantive statutory terms. But we're at a different stage here. We are trying to understand whether we have jurisdiction, whether we have jurisdiction to have a plaintiff hail a foreign government into a court of the United States. And since none of us are engaged in foreign policy decision-making, we defer mightily to the executive branch and the legislature, the political branches on matters of foreign policy, foreign relations, diplomacy, sensitive to matters like that. And the last thing we would want to do, under normal circumstances, can you tell me what rule says otherwise, is over-read jurisdiction against foreign governments and bring it in more broadly than the political branches thought was acceptable. And the political branches, at least one of them is here telling us, one's got the statute, that's what we're looking at. We're struggling with it. And the other political branch is here saying it was not meant to go this far. How do we, as a court, determine jurisdiction strictly and narrowly under the FSIA as precedent requires, then rely on a principle like, well, we'll interpret it as broadly as we think Congress might have intended, but didn't say. I think the government's position in foreign policy issues that it raises should certainly be afforded respect. But the policy decision about whether stripping immunity in a particular instance makes sense for foreign policy concerns and potential specific treatment of U.S. citizens in foreign courts was made when Congress limited the stripping of immunity to those four very specific and the most heinous of terrorist attacks, torture, extraditional killing, et cetera, in the provision of material support for such an act. So it's not our position that this is a waiver of immunity for providing material support to terrorism. It's providing material support for the object or purpose of four very specific acts. And those specific acts, though, only aid your effort to narrow the statute. I think if you read them, it's actually limited. So if the predicate act never occurs, then the state's material support cannot have proximately caused such act and the ensuing injury. Such an act, which I think is very different than something like material support. For such act, is the statutory language, for such act. Provision of material support or resources for such an... I think it's... Oh, for such an act. Yeah, yeah, yeah. For such an act. So either extraditional killing, not including attempt, or hostile shaking, or hijacking, or torture. And if no such act occurred, then the material support wasn't part of the... It wasn't part of the statutory text or structure of such an act. Under the government's reading of the word for, a definition of the word for, right? But we think that the word for, meaning for the object or purpose of, is a more natural, more natural... But I have the same question for you that I had  what part of the statutory text or structure allows you to... Where is the nexus then to those acts, other than mere foreseeability at the time of the giving of material support? Which I don't think really ties it very much to those acts. I apologize, I'm misunderstanding your question, Your Honor. But the nexus is the object or purpose of. Right. So the plaintiff will have to put on an evidentiary showing that the state provided material support, in circumstances it provided the type of support that would be used for an act of extrajudicial killing. Then the statute strips immunity of proportional injury or death. How is that purpose, as you describe it as a purpose requirement, any different from mere approximate cause, foreseeability? I think if you read Owens to preclude like an intent-based approach to the type that we're arguing, and it only includes approximate causation, I think you'd end up in the same place. Let me... So you're not really reading for as a purpose requirement. I mean, the problem with that is then the state can defend and say, oh, that wasn't my purpose. Prove that it was. And probably the plaintiff can't prove that it was. So either it's just approximate cause, which is consistent with Owens, but it doesn't really explain why for such act doesn't mean for an act that is completed. I'm just having a hard time seeing how you're splitting that, Adam. Sure. And we were, of course, appointed to defend the district court judgment. And the district court reasoning was the purpose-based approach. But under that approximate causation reasoning, like I said, I think you reach the same place. And let me explain why I think that. A terrorist organization or a state sponsor of terrorism provides material support to a terrorist organization. In most cases, it is reasonably foreseeable that that act will be used for, or that support will be used for an act of extrajudicial killing. And then we ask, well, what does section 1605A strip immunity for? It strips immunity for personal injury or death approximately caused by the provision of those. So in other words, I don't think the government's argument does as much as they think it does on this point. They are trying to cabin that analysis with a requirement that there be a death, an extrajudicial killing. But the statute strips immunity for personal injury or death. So if you read Owens to not, to preclude an intent-based reading of the type to be advocated for in a brief and that the district court adopted below, I still think you can affirm the district court on that basis. I'm just trying to understand your position. Is it that, because some of Judge Pillard's questions were sort of asking whether material support is completely freestanding. Once they provide the material support for personal injury or killing, they can be held liable. That's one option. And so that would happen even if you provide the material support for the purpose and object of a big old horrible terrorist act. And then the person instead uses it to buy a really fancy car and then drives too fast and runs over somebody and breaks their leg. So those hypotheticals. Or do you read it as saying there has to be material support and there also has to be a terrorist attack that's at least an attempt on one of these lists of things. So other forms of terrorism wouldn't fall in. Injecting people with drugs, although that might be torture, but other smaller forms of terrorism, just beating people up to recruit them or to terrorize them into paying taxes to the terrorist group. Those aren't covered. There has to be both material support and conduct that could have resulted in an extramarital killing or conduct that could have amounted to torture or could have amounted to aircraft sabotage. You have to have something that looks like one of the listed forms of conduct as well as material support or is just the material support by itself a freestanding basis for liability,  I think it's the former, Your Honor. There has to be some sort of connection to extrajudicial killings of the type, speaking of extrajudicial killings in the aggregate, not, of course, the specific injury causing the attack or a particular extrajudicial killing, but provide material support. What do you mean by extrajudicial killing in the aggregate? So in this case before us where no extrajudicial killing occurred, how would there still be extrajudicial killing in the aggregate or terrorism that meets the list here at some level? So when I say extrajudicial killing in the aggregate, I mean division of material support or such an act, such an act referring back to the enumerated acts but referring to extrajudicial killings. No, but that's back to, because I see it as sort of two things. One is I'm terrible foreign state, I'm on the list of terrorism. I go up to a leader of known terrorist group, horrible terrorist group X, and I say here is a big pile of money, a truck full of arms. I want you to go and shoot up and blow up a hotel where lots of Americans stay or an embassy or whatever, a base somewhere. I want you to go to this thing. So that's going to fit anyone's definition of big, horrible terrorist act. And once that money and the guns and the instructions are handed over, is the violation of this complete? Assuming that a personal injury results later somehow. Some tort ultimately results and qualifies as a personal injury. But none of the big shoot up, blow up happens. Is that sufficient or is your position? So that's A, is it A or is it B? All that same provision of support, all the same specificity. And then there are actual significant steps to advance that the list of terrorist activity beyond just boarding the bus, that some form of attack has to occur. It's the former, Your Honor. It's positioning. So then if they give them all the money, give them all the guns, and instead of doing the terrorism attack, they just start running a gang, a drug gang somewhere in a city. Because the foreign government will have completed all the requirements and they run the drug gang or they just, they take the money and buy fancy cars and run over and break somebody's legs. You've got a personal injury. You've got all the materials for provision and purpose. Full on blown up, terrible terrorist attack is planned and intended. But the resulting personal injury is just a broken leg getting driven over by the car. I still think that's too attenuated under the proximate clause. Nothing attenuated. That injury is directly because if they bought, they gave them the money for the car, they wanted fast cars for getaway to get to the place, blow it up and get away fast. I don't understand the attenuation. It's a matter of tort law or logic, honestly. That when the state gave all that material support to that group, it wasn't reasonably foreseeable that they would then take that support instead of commit terrorist acts, create a gang, buy a car and then run over somebody's leg. It wasn't foreseeable. I take that to create a gang. It wasn't foreseeable that someone would get injured en route to the terrorist attack? It depends on the injury. If they flee from the terrorist attack, that's just not foreseeable? It very well- Tort law? It very well might be. But it depends on the type of support and depends on the attack. It's a difficult line drawing question, always, for the district, so whether that reasonable foreseeability and substantial factor element has been met. And you're going to be required to present evidence in a stringent standard. I know that I'm over time. The court doesn't have any other questions. We asked the court to confirm, but I'd like to address any remaining points. Thank you very much. We appreciate your help. Thank you. And from the government now? Good afternoon, Your Honors, and may it please the court, Brian Schwartz of the United States. The United States deplores all acts of terrorism, including the acts that you see here. The court's questions today, however, have focused on the fact that Congress, in this statute, identified specific types of predicate acts that would give rise to an exception to the ordinary rule of foreign sovereign immunity. And I think the point we've made here, and I hope has come through, is that that choice of acts has meaning. Congress chose those acts and intended that choice to have consequences for what types of actions would be entertained in court. Well, except it lists material support as an independent bad, an independent evil on this list. It's legislative history, and there's plenty of reason to think that they were every bit as interested, if not more, in choking off the funds and resources given to terrorist groups by foreign governments as, you know, punishing the people who actually execute the things, who really get caught anyhow. But this whole thing, this isn't in a general court statute. This is under the Foreign Sovereign Immunities Act, and this was really targeted at the sovereigns. And the sovereigns are probably less often doing expeditial killings than people doing their bedding. That's the premise here. They're really doing the material support. So why it isn't? What is wrong with the reading that says, if you have done the material support, you're going to have to own it, and people are going to get to hold you accountable. Your Honor, I think that goes to the fact that Congress didn't just write a statute that addressed material support, you know, for acts of terrorism broadly, or just for material support in general. It tied that material support to material support for such an act, right? And that such an act is referring back to the immigration list of acts that Congress- For those acts, my head, but for such an act actually sounds broader than for those acts or that act. Your Honor, I mean, such is commonly used in this way to refer back to what's previously been described in the very same sentence, the list of acts that begins, you know, the terrorism exception here. And so we don't think it's at all unusual for Congress to have used that language. Such an, such an, such an act? That sounds like it's in the neighborhood of the act. I understand that sometimes- In the neighborhood of the act. It doesn't have to be precisely the listed act. Your Honor, I'm not sure that, more than I would carry that sort of meaning. I could imagine saying- Why is there an expression there? Why would you just say for an act? Your Honor, I mean, again, to refer back to the list of acts that are, that proceed in the sentence, whether it's for an act- For those acts. I mean, Congress uses that language all the time. There are certainly synonyms Congress could have employed, but it doesn't make it any less, you know, a reference back to what comes at the beginning of the sentence. So the act, the use of acts, in 1605A, count refers to the, what should we call them? The principal act, the- Predicate act. I kind of assumed something. I'm sorry. I've never read the other provisions, I understand. Yeah. For the, the big four, okay? Four. It refers to those four material supports. That's what act, because I think you had argued that act in the, when I was asking about B2, act there again refers back to the predicate acts and not the provision of material support. When it talks about when they had to be designated and when someone had to be working for the government or a US citizen. I think as some of the discussion earlier illustrated, the way those provisions make the most sense is if it's a reference to when the predicate act, the execution, killing, et cetera, occurs. And that, you know, that, that's sort of the trigger for a lot of the inquiries. And when Congress uses the word acts in C, is that also referring back to the primary act? I'm sorry, refuse- When Congress uses acts again in C, is that referring to the killing, the hijacking? In the, in the cause of action, subsection C. The murder, killing, sabotage, hostage taking, those four, referring to those four. Yeah. I mean, I believe there, what it says is, for personal injured death caused by acts described in subsection A1. Yeah, and it does that all through A2's reference are always back to acts in subject A, subsection A1, you said that's the big four. Correct, John. Oh, so then the cause of action doesn't provide to sponsors just to provide a material support? Sorry, something about Charles. What are your feedback? It's making it difficult to hear. It's not you, it's typically speakers or- Private, when it says, the private right of action in C refers to, refers back to the acts, right? Listed in A1. Just like the provisions in A2 about timing refer back to the acts in A1. So I think you said the acts here just in C, as in A2, refer only to the big four. Your Honor, I mean, I think certainly you can bring a private right of action for material support, but the material support, if you want to think of that as an act, you can bring an action based on material support, but the material support itself includes asking material support for such an act. But you just said- So we're still looping back to the acts in each. Okay, so let's go to A2. I think this is the, what time they had to be on the designated terrorism list, right? And when it says there, act described in paragraph one, is that referring, I thought your argument in a brief was that refers to the four and not the time they provided the material support. Your Honor- Did I misunderstand your brief? Your Honor, I think to the extent we address these provisions, what we were talking about is addressing the argument raised by plaintiffs and adopted by some district courts that the term act of extrajudicial killing, those are the court's first question. The term act of extrajudicial killing can include an attempt. In other words, that somehow the act of extrajudicial killing, even if you don't actually complete said act, is itself an extrajudicial killing. And we pointed out there as we're talking, in each instance, the statute here is referring to something that's been completed. The state has completed whatever act it needed to do. Talking about completion of an attempt, you can know what time an attempt happened. That's pretty easy. People know time attempts happened all the time. So when it says at the time, the act described in paragraph one occurred in A to AII, the act there refers back to the four or to five, four or five being as the sponsorship is. I hesitate to, this is not a question on which we tried to get a position. Oh, I read your brief is arguing that the act, one of the reasons you argued that their position was incorrect was that the act here and the act in down in Roman at two and the act in Roman at three and the act in B always for, when they say the act described in paragraph one, that means the four listed activity. Your honor, when we cited those provisions, we were saying them for the, I think the slightly different purpose of saying in each instance, the statute's not describing an ongoing action. It's describing something that's completed. So that's all we were citing those provisions for. All right, so this is the act language here includes a material support of terrorism alone. Your honor. The provision of material support is an act and it happens at a specific time, right? Your honor, I mean, just to get back to the text of A1 itself, I mean, it's a provision of material support resources for such an act. And of course the injury from that doesn't happen until some act occurs, right? So you're not injured until the terrorist group that receives the support goes out and commit some act. And the question is, well, did they commit a relevant act under the statute? And until that happens, there is no injury or death to which, for which the exception could apply. So in that respect- I'm just trying to ask the act in two, A2, referred to in section A, section B, the two different Roman Fs, that includes the act of providing funds to a terrorist group for a specified, one of these listed activities or not? Your honor, I hesitate to get out in front of what I've been authorized to say at this point, but certainly to the extent- I'm just talking about the statute for me. Right, I understand. I should think the act described in paragraph one would have a standard meaning throughout the statute. You know, I would not be, I would certainly recognize that intuition. I think the point is, if an extrajudicial killing has occurred, the predicate act has occurred, then there's a possibility to recover, you know, there's a jurisdiction to recover, you know, with respect to that predicate act, regardless of whether the state carried that act out directly, or whether the state provided material support or resources that, you know, were a proximate cause of that act. So I don't mean- The case before us is not the easy case like that, and so- Well, your honor, the reason- So you don't have a position on what the act described in paragraph one refers to? I don't have a formal position on that particular question. I mean, I do think there's no inconsistency in recognizing that with respect to that provision and the others, there needs to be, you know, a completed predicate act. But if you look at A1, and it says, you know, personal injury or death that was caused by an act of, so we have that preposition. And then it says torture, comma, extrajudicial killing, comma, sabotage, aircraft sabotage, comma, hostage taking, comma. For the provision, isn't provision the final noun in that link? So it's act of, and there's actually not a big four, but a big five with provision being the fifth. I mean, otherwise, you know, what is the or doing there? But I recognize that provision of material support or resources for such an act is a separate basis. No, what I'm saying is, isn't the way to read this, that it is an act of torture, of extrajudicial killing, of aircraft sabotage, of hostage taking, or of the provision of material support. I mean, if Congress had written it that way, wouldn't it mean the same thing as the way that it is written now? I suppose Congress could have written it that way, Your Honor. I don't know that it would make a huge difference. I mean, in any instance, you would still, with respect to that last category, whether you want to think of it as a fifth act, or whether you want to think of it as something else, you're still looking back to the- I understand that you've got to figure out the material support is of what. Put that aside for a second. But isn't kind of like a non-controversial, pretty much straightforward way that you have to read the statute, that when it says caused by an act of, that the fifth thing is an act of the provision of material support? I think I agree with what you're saying insofar as certainly the state is liable for taking for that action, right? That what gives rise to the state's liability is its provision of material support or resources. And so in that respect, I don't think it's, I think we're on the same page. I don't certainly disagree with that. I would just, but I think what you have here is a situation where you have a group of plaintiffs who would be perfectly happy to read that for such an act language to incorporate an intent requirement because they believe they have evidence to meet that kind of standard, even though this court in Owens rejected that sort of standard for all the reasons that the court laid out there, given the concerns that that would create mind run of these cases. And also the difficulty in connecting what can be relatively general forms of support to any particular actor or to the state's intent, right? I mean, if you look at the support that this court found sufficient in Owens itself, I mean, the support there was relatively general and there was no indication, at least in the court's opinion, that there was any suggestion that you could derive from that support Sudan's intent that any particular category of predicate act or any particular extraditional killing extraditional killings in general might result. Well, but isn't that, doesn't that support the plaintiff's position here? What we said in Owens is that we're not going to require to hold the state responsible for providing material support. We're not going to require you to tie them directly to one of the four, the first four acts listed here. It's enough that you're providing them money to be terrorists and do these terrorist things as long as that includes one of the four things. What this court said in Owens was that obviously in Owens itself, you had a situation where individuals had died. There was no question that there was an extraditional killing at issue in Owens. Question asking about what it means. Absolutely, in this court in Owens took an argument that said, well, four has to mean intent. It has to mean that we, the state intended that these acts would come about. And this court said, that's absolutely not the way this is supposed to be read. All that's required is to demonstrate proximate cause. And so what plaintiffs here would like to do because they think they have the evidence to do it is say, well, but if we can prove intent, we should nevertheless be able to sort of come in, notwithstanding the fact that no predicate act occurred. Proximate cause to the killing or personal injury for which they can recover. Right? The proximate cause has to be to link- Caused by the material supporter resource. Doesn't have to be specifically targeted. They don't have to show that. They have to link that provision material support under the text of the statute to personal injury or death. Right. I mean, there has to be personal injury that's caused by the provision of material supporter resources for such an act. Right. That's the sort of the whole, the whole picture. Right. Provided for such an act. And as we deduce that without client and plaintiffs to get, you know, subjective evidence of intent. So they've proved sort of a more objective evidence on the record. And that they provide support to this recognized terrorist group. And they do it for them, at least fully aware what these folks are doing. Include at a minimum, at least one of these things, extrajudicial killings, terrorism, or I'm sorry, sabotage, torture, those things. But they don't have to show for that checklist for killing. Right. We don't think there's any caused by this group that you've funded for one of these, one or more of these listed activities. Right. And that, they've shown a personal injury caused by a terrorism group that performs those types of activities. But I don't have to directly connect it. I don't have to prove actually that this one caused that. So potentially it seems like if material support is just as bad an act as the terrorist perpetrators of the four preceding acts, maybe even in worse because it's the lifeblood of the terrorists. And they've shown the personal injury arising from it. Why isn't that enough? I think a couple of reasons. One, you end up in a situation where some individuals, if you, to the extent that you're suggesting that there would actually be no real inquiry into the state's intent, you would just assume that anytime a state gives any kind of money or support to such an organization, there's automatically liabilities. And I think you are in the world where, you know, literally any activity or injury or death that that organization causes, no matter its connection to any predicate act, gives rise to an acceptance of foreign sovereignty. They're going to have a report from the State Department, or you tell me what, that says this government, this country is listed as a sponsor of foreign terrorism. And here's why. Is that done annually? I don't know that those are done annually. I think there's some explanation. Certainly there are State Department reports about terrorism, but this country was funneling money, arms, training, to this very group in this very country. And say they even have, you know, there's a former, someone who has resigned and fled the country there that says, yes, we were doing it so that they would kill people, extrajudicially, and blow up buildings and torture people. So they've got great evidence. That year we were doing it, and we wanted it done in major locations, cities in Israel. So they've got, I'm not being loosey-goosey about the tie between the foreign government and the group. I'm just saying, if that's one of the things Congress wanted to stop, as much as the four acts themselves, Jessica can't do those otherwise. It's more important than why isn't it enough of a statute to have a personal injury that is proximately caused by the provision of those funds for that purpose, object, known outcome of what that money and what those money, that money and those weapons are going to result in. It's sufficient. Well, I think it's important to recognize that if you adopt that kind of purposive sort of approach to that provision of the statute, then that's going to lead some plaintiffs to do in fact- That's purposive. I'm trying to be textual here. Well, Your Honor, I'm sorry. I don't mean like, I mean that there's an inquiry into purpose. I don't mean a purpose of a textual interpretation. What I mean is that if you think the term for, and that for such an act is going to require plaintiffs  was saying a moment ago, well, we have to show that the state gave that support, intending, hoping, with the goal of extraditional killings resulting, that is going to foreclose some plaintiffs who do suffer from predicate acts, the predicate acts that Congress identified from being able to invoke this exception, right? There's this court recognized in Owen, that there are- Let's speak while we save hours. So you're not, you're not assuming purpose, I think? Are you asking me a question? Oh, I'm just clarifying what's on my table. Because there's these- I think what I can say, I read Owens, and our reality is people do not have witnesses say this is what we were thinking, and there's no memos. Maybe I'm wrong, but there's no secret memos. And what happens is, US government has said, with some explanation, these folks are supporting ex-terrorist organizations in this timeframe, and the activities they do, and here's ways in which they support them. And someone is now injured during that year, in the location, with either, I mean money's easy, but we'll say even if they're providing guns, someone is shot in a terrorist attack by them. And they will come in, and they will bring that evidence, and maybe they'll have some experts that will testify as well, and will say, yep, that's what they were doing. These people were the lifeblood of this organization. They funded everything they did, and there's no dispute that that terrorist group did the act in my case. All right, that's what I've proved. No one has to come in with objective intent, or memos, or a witness who's going to say what everyone said, but I assume that's how these things are ordinarily proved. Your Honor, I'm not disputing that you can sort of prove intent by, you know, by using objective means, or what have you. I'm not disputing that. They gave them this money for these, right? They have to show that this money was given for the listed acts, correct? Your Honor, no, not in the sense that the state hoped or intended any of those acts would come about. I mean, if the state gave, you know, Hamas a big check that said, for your charitable efforts, right, and in fact, hoped, intended, and designed that Hamas, right, in this case, of course. Well, I mean, it is certainly the case as a proximate cause matter. We recognize that it's reasonably foreseeable, given the fungibility of material support, et cetera, that the group may nevertheless go out and do that. But if a plaintiff comes in and has to prove, well, actually, the true intent of the state when it gave X money to Y group was... The plaintiff says X is approved under O.A.C. I'm not advocating for that at all. All I'm saying is, once you have that proof and you demonstrate that you had a personal injury that was proximate cause by that provision, support, why is that not enough? Well, because at that point, it's, I mean, it's not clear to me, frankly, what work for such an act is really doing in the statute. It really restricts what the terrorism funding is for. It's for, in the sense of, not in a subjective purpose, but you could prove in tort law, whether it's willful indifference or, you know, everyone, a reasonable fact finder could infer, you know, exactly where that money was going to go to. Or even if you just meant it to go over here, you freed up money to go over there, right? Then that's what it's doing. Your Honor, I think it would be, you know, as Ms. Moss pointed out, enforced, pretty extraordinary for Congress to have created a statute under which, you know, it enumerated specific acts, status law before, and then use those same acts to identify the material support to be linked to the material support and resources and use that as a mechanism for sort of a general tort statute for all the activities that that organization carries out. I think that doesn't quite fit the text of the statute. I don't think it fits the court's understanding in Owens where it recognized that intent is not something that plaintiffs have to show because of the difficulties inherent in that. I mean, the word for such an act, which is very broadening. The ordinary reading of for is either purpose or intended, anticipated outcome, right? That's sort of the primary, initial definitions of the word for. We allocated oral argument time to you for the purpose of having an opportunity to persuade us how to interpret this statute. And it will have served that purpose and object, regardless of whether you actually persuade us or not of the outcome of the statute. It's just the ordinary meaning of for and such an act feels to me as nothing little more flexible than for those acts or for one of those acts or for one or more of those acts. And so I don't understand where I'm trying. I'm really struggling. I'm struggling with the text of this statute as to what it is aimed at here, given at least my sense that since this was placed, you know, there's another provision of the Foreign Sovereign Immunities Act waiving immunity for violations of this very provision that Congress was quite intent upon getting these foreign government suppliers and funders of terrorists, which is what they want to do. And you had an attack and, you know, grace of God that it didn't result in a death, but it sure, it certainly resulted in personal injury. I mean, your Honor, again, the reason that this, I mean, I recognize that that is a possible understanding of the term for, it's certainly a use of the term for that sometimes occurs. It's not a possible understanding, it's a natural reading. But it is not the one that this court accepted in Owens. I mean, this court was presented with that exact argument that for means that the state wanted or intended that had the object or purpose, frankly, that this, you know, the terrorist attack would result. And the court said, we don't inquire into the state's intent. We don't ask that question under the statute. All we look at is, you know, is proximate cause. So, I mean, to then say, well, but actually plaintiffs do have to demonstrate some amount of object and purpose and intent on the part of the state, some intermediate level between the specific intent that the state advocated for in Owens' pure approximate cause analysis. But they knew what, reasonable jury could infer they knew what they were doing, seems to be the test. Well, not just could infer what they were doing, but that they, right, that you would still be having to show, you would still be asking the jury in that circumstance to conclude that they had a purpose or intent that was, you know, linked to, you know, an object of purpose that was linked to a particular type of predicate act. So if you have a bad government and it is providing boatloads of money and happens to have nice memos detailing this for blowing up buildings, their bombs are really efficient at blowing up buildings. There's more money for it. It's for blowing up buildings. And someone dies in the process. That counts as such an act. Someone dies in the process. One person just happens to be, they didn't think, they thought it was a bad, empty building, but the foreign government was only doing it for blowing up buildings. No, no, I mean, I think- That provision of support for such an act if a death results, for actual killing if a death results. I think your question there would actually make me touch on the question of whether that's a deliberated killing for purposes of the definition of an actual killing. So I think that's a slightly different issue than the broader question of whether when the state is providing material support, does a predicate act actually have to occur before this exception can be blocked? So, I mean, I think there's an issue there in your hypothetical about whether the predicate act has actually occurred, even though there's been a death. Because not all deaths are actually for killing. If the text here is ambiguous as to whether one of the four initially listed acts has to occur, what happens then? What are we supposed to do then? I think you give the statute a sort of fair reading. I don't think there's a- We haven't advocated for a thumb on the scale in either direction. I mean, I think as you pointed out, the plaintiffs here in the Court of Amicus have invoked Van Vennenden. Van Vennenden itself didn't involve the scope of an exception. That was the notion of a fair reading. There was no question there that the exception applied. Just a question of whether particular claims were timely because they were related to other claims that were already pending. So, I don't think- I am stuck, and it seems intractably ambiguous. Either way, what do I do? I think to the extent that there are other considerations you bring into play, it's the one the Supreme Court identified recently in Philip and has identified in the past, namely that any assertion of United States jurisdiction over a foreign sovereign is a significant event. And in those circumstances, courts consider and take into account the possible reciprocal consequences to the United States in foreign courts and elsewhere when courts domestically assert jurisdiction over foreign sovereigns for activities, particularly those that happen outside the United States. So, I think in those circumstances, you would, I think, recognize that those considerations would counsel a narrower reading if you thought it was purely a sort of total equipoise sort of situation. Any other questions? Thank you, Mr. Hanselwood. The United States is not a party to this case. We brought you in. We asked you to help us as advocates. You ended up filing- governments ended up filing two briefs. And this oral argument, we're grateful for the government's participation. Thank you, Your Honor. Okay, Mr. Radin, am I saying that correctly? Did I say that correctly, Radin? Perfect. Okay. We'll give you three minutes. You agree that a terrorist attack, we'll define in a moment, must be in the natural sequence of events that led to the injury. But that sentence describes the provision of material support or resources for such an act, describes the kind of an attack that the support is for. The state sponsor of terrorism doesn't know how the attack ultimately ends. The kind of an extrajudicial killing attack without there being an extrajudicial killing. An attack that's designed to kill people. I think that- If that's what you are advocating, why would Congress not have written it more along the lines of what Judge Wilkins was suggesting, with a real parallelism? In other words, personal injury or death that was caused by an act of hostage- I'm going to get the order wrong, but hostage taking, torture, extrajudicial killing, kidnapping, or the provision of material support to a foreign terrorist organization. It seems like under that view, then it would encompass the greater negligence questions you were asking about before. It seems that the statute is intending to limit- But I think the way you're reading it is that. And it does encompass them. It would still have to be foreseeable that personal injury or death had resulted because that's the only thing that is- as to which the immunity is waived. I think it means foreseeable in the context of provision, context of material support provided to go out and kill people. I don't think it means- But you're detaching it from bionic killing. So maybe the statute would have to say for an act of one through four, or the provision of material support to a foreign terrorist organization that foreseeably engages in such an act. In other words, if it's foreseeable that the- you've given material support and purpose is only causation under Owen. So it's just foreseeability. We all know what foreign terrorists, especially if they're designated foreign terrorists, what they do. So all that's needed is foreseeability engages in such acts. And then any personal injury or death that's possibly caused by that is covered. That's the way you're reading this statute is that it effectively says that. Yeah, I think a state sponsor of terrorism could appear, if it chose to, one of these cases and say there's been a horrible misunderstanding that wasn't the purpose of the provision of the material support. I can show with contrary evidence that is provided for another purpose. And it's all gone horribly awry. But Owen says that type of burden on plaintiffs, especially if the defaulting foreign sovereign is impossible to meet. What's helpful with approximate cause standard here is that as the United States has argued elsewhere, such as in Boulder, this is the naturally, the naturally foreseeable consequence providing material support to terrorist groups. So it's not to say they couldn't argue otherwise. So you just confirm for me, you are reading the statute to effectively say personal injury or death that was caused by one of these four acts or the provision of material support to a foreign terrorist organization. The foreseeability relates to the intended act occurring as in they ordered up an act of extrajudicial killing. And from its perspective that occurred as in the type of attack. I'm really confused because you say they ordered it up, but you have been very clear  I think when the person, if the person is a terrorist, it derives from the nature of a foreign terrorist organization. I think from the perspective of a statute depriving a state sponsor of terrorism community, it doesn't mean to say that if you provide material support to a terrorist group, then however, someone might get injured in a way that's effectively could be unrelated. We had an example before of if the provision of material support itself injures you, they give money to a terrorist group and a big duffel bag and it falls on your foot. I don't think that's anticipated. That might be free, right. But we all agree that the injury has to be reasonably foreseeable to the giver of material support. No matter whose interpretation you're following. So then the question is, is it any and all injuries, personal injuries or death that derive from the provision of material support to a foreign terrorist organization? Or is it only the provision of material support for these acts, which are defined in the case of extrajudicial killing to be limited to actual extrajudicial killing? Well, from these acts- You want something in between and I don't know textually where you're getting that. For these acts from the perspective of the foreign state, which is providing material support for these acts to occur and then- As long as there's any special showing for that and a state that comes in and says, no, no, I wrote on the check only for your humanitarian good deeds. It's a non-showing I take you to be saying because that's not a defense. Under the proximate cause standard, which- Right, so it's just approximate cause. So why isn't the statute or the provision of material support to a foreign terrorist organization that foreseeably engages in such acts? And as long as it's foreseeable that the terrorist organization does engage in torture or extrajudicial killing or hijacking or hostage taking than any personal injury or death that the material support approximately causes. It has to be foreseeable, but it doesn't have to be linked to those acts. That's the way you're reading the statute, right? I do think it has to be linked to the attacks to be- Where do you get that? I think that the purpose of this provision, which is the waiving immunity rather than itself being the claim, is attempting to target for the state sponsor of terrorism what it chose to do and what the consequence was from it. It doesn't refer to state sponsor terrorism. It refers to personal injury or death caused by an act of A, B, C, D or the provision of material support. Well, the state sponsor of terrorism is a separate limitation, 16058. Because it has to be a state sponsor of terrorism, yeah. Yes, yes. So this statute is aimed solely at, and there's only four of them, by the way, so a rather limited universe of states that the United States has already determined are essentially defined by their support for terrorism. Okay. Thank you very much. Thank you. Mr. Beal, we'll give you three minutes as well for rebuttal. If you did you mind. Oh, then never mind. All right. Well then, Mr. Beal, I will say that you were appointed by the court to represent or to defend the district court's judgment in this case. And we're very grateful for your assistance. Case committed.
judges: Millett, Pillard, Wilkins